UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN I. FRIEDMAN, et al.,<br><br>                    Petitioners,<br><br>   v.<br><br>CITIGROUP GLOBAL MARKETS, INC.,<br><br>                    Respondent. | CASE NO: 06-CV-830 W (WMc)<br><br>**ORDER DENYING PETITIONER'S MOTION FOR VACATUR OF ARBITRATION AWARD** |

On March 2, 2004, Petitioners Melvin I. Friedman, Individually, and Melvin I. Friedman and Joan L. Friedman, as Trustees of the Friedman Family Trust dated 12/10/98 ("the Friedmans") instituted arbitration proceedings against Respondent Citigroup Global Markets, Inc. ("Citigroup"). The arbitration panel ("the Panel") denied all of the Friedmans' claims. On June 4, 2007, the Friedmans moved this Court to vacate the Panel's decision for violating the Federal Arbitration Act (FAA), 9 U.S.C. § 10. The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d.1). Because the Friedmans failed to show that the arbitrators improperly excluded evidence or were biased, the Court **DENIES** the Friedmans' motion to vacate the Panel's decision.

## I. Background

From October 1999 through January 2002, the Friedmans invested nearly $1.8 million with Citigroup. While they invested, the balance decreased by approximately $625,000. The Friedmans allege that Citigroup's mismanagement and market speculation caused the decrease. (Pet'rs' P. & A. at 2.) Citigroup points to the market downturn during this time period. Because of the loss, the Friedmans began transferring their investments to another brokerage in San Francisco. By April 2002, they had transferred the entire remaining balance of their IRA fund to that brokerage.

Because the account agreement and the National Association of Dealers (NASD) rules required arbitration for account disputes, the Friedmans filed a Statement of Claim for arbitration with NASD Dispute Resolution, Inc. (DR) against Citigroup. (Pet'rs' P. & A. at 3.) The Friedmans alleged breach of fiduciary duty; failure to supervise; violation of federal and state securities laws, NASD Rules of Fair Practice, and NYSE Rules; elder abuse; and unfair and deceptive practices against senior citizens. (Bonnheim Decl., Ex. 8.) They requested approximately $625,000 in damages, their actual losses while they held accounts with Citigroup. (Id.) The Friedmans and their counsel waived all rights and benefits under California Civil Code Section 1542 and the California Ethical Standards for Neutral Arbitrators. (Id.)

The Panel of arbitrators was selected according to NASD Code of Arbitration Procedure. Rule 10308 of the NASD Code requires one non-public and two public arbitrators. Parties rank and strike arbitrators until a mutually agreeable panel remains. To assist in ranking, NASD-DR provides a list of arbitrators along with profiles containing the arbitrators' professional and educational background, previous NASD-DR awards, and any potential bias or conflict of interest that the arbitrator has disclosed to NASD-DR. Suzanne Viau Chamberlain was selected as a public arbitrator and the presiding chair, with George Hubner as the other public arbitrator and J.A. Dutcher as the non-public arbitrator. (Bonnheim Decl., Ex. 8.)

//

The arbitration hearings took place from November 30, 2005, through December 9, 2005, and on December 21 and 22, 2005, in San Diego, California. On December 2, 2005, a witness mentioned an additional manual not submitted during discovery in his testimony. The Friedmans then moved (1) to reopen discovery to obtain the manual, and (2) to allow testimony about the manual by two witnesses who had already been cross-examined and excused. (Bonnheim Decl., Ex. 8.) Citigroup agreed to produce the manual. On December 21, 2005, the Panel heard arguments regarding the need for witness testimony on the materials. The Panel ruled that the prior testimony by the excused witnesses was sufficient, but permitted the Friedmans to refer to the manual in closing. Additionally, the Panel ruled that an expert could later discuss the manual to the extent he was qualified. The Friedmans' counsel did not object.

On December 22, 2005, Citigroup disputed the qualifications of the Friedmans' expert, Mr. Grosnoff. (Bonnheim Decl., Ex. 8.) During extensive questioning from both sides, Mr. Grosnoff revealed that he had not participated in the brokerage industry for over twenty years and did not have a brokerage license. Noting these findings, the Panel ruled that the expert did not qualify to testify to matters regarding portfolio or account management, supervision, damage calculation, suitability, or compliance issues. He did, however, qualify as to other matters—including portfolio performance, in whole or in part, relative to the market's performance based on whatever indices he was prepared to discuss. The Panel further ruled that counsel could direct the Panel's attention to any other aspect of the manual in their closing statements. Because the Friedmans had not prepared any other expert witnesses, closing argument was the only remaining opportunity to discuss the manual. During closing arguments, the Friedmans' counsel discussed the manual at some length. (Tr. in Supp. of Opp. at 147–152.)

Following closing arguments and before the Panel's ruling, both parties stated for the record that they had a full and fair opportunity to be heard—though the Friedmans' counsel stated that he believed he should have been able to cross-examine the two excused witnesses. (Tr. in Supp. of Opp. at 109.) On January 17, 2006, the Panel

issued an award denying all of the Friedmans' claims. On April 10, 2006, the Friedmans filed a motion to vacate the arbitration award alleging that the Panel acted with evident partiality and improperly excluded evidence pertinent and material to the controversy.

## II.     Legal Standard

The Federal Arbitration Act (FAA) reflects a strong federal policy favoring arbitration. A.G. Edwards & Sons, Inc. v. McCollough, 967 F.2d 1401, 1404 n.2 (9th Cir. 1992). When parties agree to resolve their dispute through arbitration, courts generally defer to the decisions of the arbitration panel. See Todd Shipyards Corp. v. Cunard Lines, 943 F.2d 1056, 1060 (9th Cir. 1991) ("It is generally held that an arbitration award will not be set aside unless it evidences a 'manifest disregard for the law.'"); Catz Am. Co. v. Pearl Grange Fruit Exch., Inc., 292 F. Supp. 549, 551 (S.D.N.Y. 1968) ("Since one of the fundamental purposes of resorting to arbitration is to reduce the cost and delay of litigation, the role of the court must be limited in reviewing an arbitration award."). Section 10(a) of the FAA, however, provides that the court may vacate an arbitration award when there is either "evident partiality . . . in the arbitrators" or when the arbitrators are guilty of misconduct in refusing to hear "evidence pertinent and material to the controversy." 9 U.S.C. § 10(a).

Evident partiality results when an arbitrator (1) fails to disclose relevant information, or (2) harbors actual bias. Woods v. Saturn Distrib. Corp., 78 F.3d 424, 427 (9th Cir. 1996). In nondisclosure cases, an arbitrator's failure to disclose information that gives the impression of bias in favor of one party warrants vacatur. Id. (citing Commonwealth Coatings Corp. v. Cont'l Cas. Co., 393 U.S. 145, 149 (1968); Schmidtz v. Zilveti, 20 F.3d 1043, 1047 (9th Cir. 1994) (stating that the standard for determining evident partiality in nondisclosure cases is "whether there is a reasonable impression of partiality").

In actual-bias cases, though, a reasonable impression of bias does not establish evident partiality because the arbitrator's decision is directly at issue. Woods, 78 F.3d

at 427. Therefore, "the party alleging evident partiality [in actual-bias cases] must establish specific facts which indicate improper motives." <u>Sheet Metal Workers Int'l Ass'n Local 420 v. Kinney Air Conditioning Co.</u>, 756 F.2d 742, 745 (9th Cir. 1985). In both types of cases, the party challenging the arbitration decision bears the burden of showing partiality. <u>Woods</u>, 78 F.3d at 427.

A district court may also vacate an arbitration award if the arbitrator is "guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a). Because an arbitrator has discretion to exclude cumulative or irrelevant evidence, <u>Catz</u>, 292 F. Supp. at 553, a court should only vacate an award if the arbitration panel abused its discretion. <u>Petroleum Transp., Ltd. v. Ionian Challenger</u>, 419 F. Supp. 1233, 1235 (S.D.N.Y. 1976); <u>see also</u> <u>Hoteles Condado Beach v. Union of Tronquistas Local 901</u>, 763 F.2d 34, 40 (1st Cir. 1985) ("Every failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award."). Without proof of bad faith or gross error, an arbitration award should be upheld. <u>United Paperworker's Int'l Union v. Misco, Inc.</u>, 484 U.S. 29, 41 n.10 (1981) (noting that it is a very rare instance when an "arbitrator's procedural aberrations rise to the level of affirmative misconduct"). Similarly, a court should not overturn a "reasonable and fair" arbitration award. <u>Bisnoff v. King</u>, 154 F. Supp. 2d 630, 637 (S.D.N.Y. 2001).

Consequently, the FAA does not require a perfect arbitration procedure. Rather, a court should confirm an award—"even in the face of erroneous findings of fact or misinterpretations of the law"—unless the party challenging the decision meets one of the narrow statutory exceptions. <u>Kyocera Corp. v. Prudential-Bache Trade Svcs., Inc.</u>, 341 F.3d 987, 997 (9th Cir. 2003) (quoting <u>French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 784 F.2d 902, 906 (9th Cir. 1986)).

//
//
//

### III. Discussion

### A. Petitioners failed to meet their burden to show evident partiality.

The Friedmans allege that chairperson Suzanne Viau Chamberlain acted with evident partiality in favor of Citigroup during the arbitration hearing. (Pet'rs' Mem. P. & A. at 5.) The Friedmans do not clearly indicate whether Ms. Chamberlain acted with evident partiality because of a nondisclosure of certain information, because of an actual bias she held, or both. Either way, the Friedmans have not met their burden, so both claims must fail.

#### *1. Nondisclosure.*

The Friedmans have failed to show that Ms. Chamberlain did not disclose information leaving an impression of bias. See Woods, 78 F.3d 427. They have not pointed to *any* undisclosed facts suggesting bias. They allege that Ms. Chamberlain did not provide a supplemental disclosure on her prior legal work, yet they only point to information already disclosed. Ms. Chamberlain disclosed that she previously sued and defended specific brokerage firms under securities laws. (Gumbs Decl., Exs. 1 & 2.) She also notified the parties that she and her husband had credit cards with Citigroup affiliates, and that she had been on another arbitration panel for a case involving Citigroup that settled before the hearing. Id. After she repeated these facts on the first day of the arbitration hearing, the Friedmans' counsel proceeded *without objection*. (Tr. in Supp. of Opp'n at 126–27.) The Friedmans allege no further items Ms. Chamberlain should have disclosed that leave an impression of bias—and the Court will not assist the Friedmans in meeting their burden by speculating.

#### *2. Actual bias.*

The Friedmans failed to point to "specific facts which indicate improper motives." See Kinney, 756 F.2d at 745. They have not offered *any facts* indicating that Ms. Chamberlain had any actual bias or motive to rule in favor of Citigroup. Instead, the

1  Friedmans allege only that the two evidentiary rulings during the hearing were wrong.
2  But a mere difference of opinion as to a legal ruling comes nowhere near a specific fact
3  suggesting actual bias. Thus, the Court concludes that the Friedmans have not met
4  their burden to show evident partiality.

**B.  The Panel properly excluded continued cross-examination and part of an expert's testimony.**

The Friedmans also allege that two of the Panel's evidentiary rulings—refusing further cross-examination of an excused witness and excluding part of an expert's testimony—constitute misconduct. (Petrs' Mem. P. & A. at 5.) This argument lacks merit because the Panel acted within its discretion on both evidentiary rulings. "Vacatur is appropriate only when exclusion of relevant evidence so affects the rights of a party that it may be said that he was deprived of a fair hearing." Hoteles, 763 F.2d at 40 (citing Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co., 397 F.2d 594, 599 (3d Cir. 1968)). The Friedmans have made no such showing.

*1.  Cross-examination.*

During the arbitration proceedings, the Friedmans moved to cross-examine two witnesses on a newly admitted manual. (Bonnheim Decl., Ex. 8.) The Panel properly denied the motion because the Friedmans had already cross-examined the witnesses. (Id.) Like a trial judge, an arbitrator has discretion to exclude cumulative evidence. Catz, 292 F. Supp. at 553; see also Obrey v. Johnson, 400 F.3d 691, 698 (9th Cir. 2005) (finding that due to their presence at trial permitting a case-by-case examination of the facts, issues, and circumstances, trial judges retain broad discretion in determining whether the value of evidence is outweighed by the waste of time in presenting cumulative evidence). Here, the Panel heard arguments, deliberated, and ruled that further cross-examination would simply prolong the proceedings. (Tr. in Supp. of Opp. at 126–27.) The Court cannot overturn that ruling simply because the Friedmans

1  disagree with it. Even were the Court inclined to rule differently, it cannot conclude
2  that the Panel grossly abused its discretion. See Hoteles, 763 F.2d at 40.
3        Moreover, the Panel exercised its discretion by permitting the Friedmans' expert
4  to discuss the manual and to allow counsel to refer to the manual in closing arguments.
5  Both rulings softened whatever adverse consequences would otherwise stem from its
6  exclusion. The Panel expressly provided that the expert would only testify to the scope
7  of his expertise, a ruling accepted by the Friedmans' counsel. (Tr. in Supp. of Opp. at
8  126–27.) Additionally, the Friedmans availed themselves of the opportunity and their
9  counsel presented extensive arguments based on the manual during closing statements.
10 In sum, the Friedmans have failed to show how one exclusion, with qualifications,
11 deprived them of a fair trial. Therefore, the Court cannot conclude that the Panel
12 abused its discretion.

14 *2.  Expert testimony.*
15       The Friedmans also allege that the Panel committed misconduct in limiting the
16 scope of expert testimony. (Pet'rs' Mem. P. & A. at 5.) Again, "[v]acatur is appropriate
17 only when exclusion of relevant evidence so affects the rights of a party that it may be
18 said that he was deprived of a fair hearing." Hoteles, 763 F.2d at 40 (citing Newark
19 Stereotypers' Union, 397 F.2d at 599). And again, the Friedmans have made no such
20 showing.
21       A careful analysis of the arbitration transcript reveals that the Panel allowed
22 extensive questioning of the witness by both sides to establish his credentials. (Tr. in
23 Supp. of Opp'n at 138–44.) Then, as now, the Friedmans failed to show how the
24 witness would offer any information on the manual not apparent to the Panel. (Id.)
25 Moreover, because the witness was not a licensed stockbroker and left the securities
26 industry for twenty years, the Panel concluded that he had a limited scope of expertise.
27 (Id.) Because the witness had prepared to discuss the performance of the Friedmans'
28 portfolio relative to certain market indices, the Panel permitted him to testify on those

matters. (Id.) But the Court cannot agree that his credentials with respect to the manual or the model portfolio were so well established that the Panel abused its discretion in limiting his testimony.

Thus, even were an abuse of discretion grounds for vacatur, the Court cannot conclude that the Friedmans did not receive a full and fair hearing on the merits. Rather, the Friedmans have shown that the arbitration hearing included two adverse evidentiary rulings and that the final decision was unfavorable to them. The Court cannot vacate the arbitration award on that basis.

## IV. Conclusion & Order

Because the Friedmans have not shown that the arbitrator was evidently partial or committed misconduct, the Court hereby **DENIES** the Friedmans' motion to vacate the arbitration award.

**IT IS SO ORDERED.**

DATED: July 24, 2007

_____
Hon. Thomas J. Whelan
United States District Judge